THIS OPINION IS CITABLE AS
PRECEDENT OF THE TTAB

Mailed:
June 23, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Viventia Biotech Inc.

_____

Serial No. 76424575

_____

William F. Lawrence and Marilyn Matthes Brogan of Frommer Lawrence & Haug LLP for Viventia Biotech Inc.

Yong Oh (Richard) Kim, Trademark Examining Attorney, Law Office 115 (Tomas V. Vlcek, Managing Attorney).

_____

Before Seeherman, Hohein and Rogers, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Viventia Biotech Inc., a Canadian corporation, has appealed from the final refusal of the Trademark Examining Attorney to register ARMED ANTIBODIES as a trademark and service mark for, respectively, the goods and services which currently are identified as follows:

> Biological preparations for use in the manufacture of biopharmaceutical and biotechnology products (Class 1);

> Biopharmaceutical and biotechnology
> reagents namely hybridoma-generated
> antibodies and mammalian antibodies and
> recombinant fragments thereof for
> medical diagnostic use in the treatment
> of cancer; biopharmaceutical
> preparations for use in immunotherapy
> and diagnostics, namely monoclonal
> antibodies and binding fragments
> thereof and immunoconjugates,
> particularly for treatment of cancer;
> biotechnology products for use in
> immunotherapy and diagnostics, namely
> monoclonal antibodies and binding
> fragments thereof and immunoconjugates,
> particularly for the detection and
> treatment of cancer (Class 5); and
>
> Research and product development
> services in connection with the
> biopharmaceutical and biotechnology
> industries (Class 42).[1]

Registration has been refused pursuant to Section 2(e)(1)

of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground

that applicant's mark is merely descriptive of its

identified goods and services.

The appeal has been fully briefed.  Applicant did not

request an oral hearing.

Before discussing the ground for refusal, we must

address an objection by the Examining Attorney.  With its

---

[1]  Application Serial No. 76424575, filed June 26, 2002,
asserting a bona fide intent to use the mark in commerce, and a
claim of priority of January 16, 2002, under Section 44(d) of the
Trademark Act, based on Canadian application No. 1,128,376.  The
Canadian application subsequently issued on April 19, 2004, and
applicant has claimed Section 44(e) of the Act as its basis for
registration.  Office records show that the Section 44(e) basis
has been accepted.

brief applicant submitted what it characterizes as "a recent internet search." This submission is manifestly untimely. See Trademark Rule 2.142(d). Applicant has apparently conceded the validity of the Examining Attorney's objection because, in its reply brief, it has asked the Board to take judicial notice of it. However, this material is not proper subject matter for judicial notice, see TBMP §§1208.04 and 704.12 (2d ed. rev. 2004). Accordingly, it has been given no consideration.

We now turn to the substantive issue before us, namely, whether ARMED ANTIBODIES is merely descriptive of applicant's identified goods and services. In support of his position that ARMED ANTIBODIES is merely descriptive, the Examining Attorney has made of record articles and web pages. The first article, from the online publication "Signals," is particularly instructive about the use of antibodies, and the development of "armed antibodies," in the treatment of cancer. We have, therefore, included a substantial amount of this article in our opinion. Excerpts from this article, as well as the other materials, follow (emphasis added):

> **ARMED ANTIBODIES**
> The discovery by Kohler and Milstein in 1975 that it was possible to generate monoclonal antibodies via hybridoma technology sparked a scientific

3

revolution—and the consequences have been awesome. …Among the approved products are a number of highly successful cancer therapies, but clinical experience has proven that these monoclonals work best when dosed concurrently with or following chemotherapy. So-called "naked" antibodies are just not that good at killing cancerous cells on their own. That's why there has been a resurgence of interest in the use of **"armed" antibodies**—molecules that are linked to or fused with chemotherapeutic drugs, lethal toxin molecules or powerful radionuclides—for new cancer treatments.

...

Since combining antibody therapy with chemotherapy works in cancer, why not fuse a chemotherapeutic agent directly to an antibody molecule? That way, the antibody could deliver the toxic agent directly to the tumor site and spare normal cells from its devastating effect. Well, Wyeth's monoclonal drug Mylotarg, an anti-CD33 monoclonal conjugated with calicheamicin, was designed to do precisely that. …

It's also possible to attach a radionuclide to an antibody molecule—arming it to deliver intense radiation directly to the cancerous growth. Biogen Idec Inc's Zevalin was the first radioimmunotherapy to garner FDA approval; a year or so later, Corixa Corp.'s Bexxar followed suit. …

There's no doubt that **armed antibodies** work—and the three already on the market represent important alternatives to the "naked" antibody-based cancer therapies now available. But using antibodies to deliver payloads of toxins, radionuclides or

chemotherapeutic drugs is not a new concept. …

...

**Armed Antibodies** Under Development For Treating Cancer [title of a box listing two drugs by ImmunoGen]

...

Founded in 1982, the year after ImmunoGen got its start, Immunomedics Inc. also focused on developing a new type of antibody-based cancer therapy—but instead of using the molecules to deliver toxic drugs, the firm chose to load them up with radionuclides.

...

**Armed Antibodies** Under Development For Treating Cancer [title of a box listing four drugs by Immunomedics]

...

**Armed Antibodies** Under Development For Treating Cancer [title of a box listing five drugs, one by Enzon Pharmaceuticals, two by NeoRx and two by Peregrine Pharmaceuticals]

...

**Armed Antibodies** Under Development For Treating Cancer [title of a box listing four drugs, two by Antisoma and two by Millennium]

...

FULL CIRCLE
Seattle Genetics, ImmunoGen, Immunomedics and Enzon Pharmaceuticals are certainly not the only biotechs exploring the potential of **armed antibodies**—they're joined by Antisoma plc, Peregrine Pharmaceuticals Inc., Millennium Pharmaceuticals, Genentech, Abgenix, Protein Design Labs, Celltech, Genencor and no doubt others.  …

Using monoclonal antibodies to deliver killer payload to tumors was a fresh and exciting idea in the 1980s—but a series of early trials that met with failure seemed to spell doom for the concept.  Today, however, it's made a

comeback, as compelling clinical evidence has demonstrated that most monoclonals really don't do a very good job at killing cancerous cells on their own.  To really pack a wallop, **antibodies** need some help—and **arming** them with anticancer drugs, lethal toxin molecules or powerful radionuclides is suddenly the hottest new approach to cancer therapy.
"Signals," © 2004, www.signalsmag.com

\*\*\*

Cancer Therapies of the Future
...
Many of the drugs in development use antibodies in conjunction with a chemotherapeutic or radioactive compound.  Such **armed antibodies** typically show more potent anti-tumour activity than their "naked" parents. Unfortunately, clinical evaluation of many **armed antibodies** has been plagued by unacceptably high levels of toxicity in several clinical trials, leading many to abandon this approach. Nevertheless, **antibody arming** is enjoying a revival with the approval of the first **armed antibodies** Mylotarg (Wyeth) and Zevalin (IDEC Pharmaceuticals).  Corixa's Bexxar is currently in registration.
G.K. Mattison, "HealthBeat"

\*\*\*

… Scientists are also **"arming" monoclonal antibodies**, antibodies that are produced in the laboratory and engineered to bind to a specific protein on a patient's tumor cells, with radionuclides.  When such **"armed" antibodies** are injected into a patient, they bind to the tumor cells, which are then killed by the attached radioactivity, but the nearby normal

6

cells are spared.  So far, this approach has produced encouraging success in treating patients with leukemia.
Washington State Department of Health, "Medical Uses of Radioactivity," Fact Sheet #20, July 2002

***

For example, a promising treatment for leukemia involves **arming monoclonal antibodies** with radioisotopes.  The antibodies are produced in the laboratory and engineered to bind to a specific protein in tumor cells.  When injected into a patient, these **armed antibodies** bind to the tumor cells, which are then killed by the attached radioactivity.
www.nsc.org

***

Monoclonal Antibodies: New Therapeutic Cancer Agents [title]
An **"armed" antibody** in patients with stage IV (advanced) breast cancer.
This study is assessing the effects of an antibody directed against a protein found on the surface of breast cancer cells called the Lewis(y) antigen.  The **antibody is "armed"** with eight doxorubicin molecules.  This randomized phase 2 study in chemotherapy-naïve patients with stage IV disease will compare single agent doxorubicin to treatment with the **armed antibody**, each given once every three weeks.
University of Virginia Health System, www.healthsystem.virginia.edu

***

Genentech
Genentech Projects Double-Digit Growth for 2005-2010

> ...
> Keeping the Pipeline Full
> … Genentech reported that it is
> studying a variety of approaches to
> molecular oncology, including signaling
> pathways, anti-angiogenesis, tumor
> antigens and **armed antibodies**.
> March 14, 2003
> www.gene.com/gene/news/press-
> releases/detail=5907
>
> ***
>
> Antibodies Armed With Toxins and
> Radionuclides
> A major limitation to the use of
> monoclonal antibodies in the treatment
> of cancer is that most are poor
> cytocidal agents.  To address this
> issue, monoclonal antibodies are being
> linked to a cytocidal agent, such as a
> toxin or radionuclide, which is then
> targeted to the tumor cell by the
> antibody.  The **arming of antibodies**
> with toxins has been stimulated by the
> approval of the first immunotoxin-**armed
> antibody** gemtuzumab ozogamicin
> (Mylotarg), which links the toxin
> calicheamicin to a CD33-specific
> antibody for use in the treatment of
> myelogenous leukemia.
> www.medscape.com

A mark is merely descriptive, and therefore prohibited from registration by Section 2(e)(1) of the Trademark Act, if, as applied to the goods or services in question, it describes a significant ingredient, quality, characteristic, function, feature, composition, purpose, attribute, use or subject matter of such goods or services. In re Engineering Systems Corp., 2 USPQ2d 1075 (TTAB 1986).

The evidence set forth above shows that linking antibodies to such agents as radioisotopes or chemotherapeutic compounds or toxins is referred to as "arming" them, and that the resulting antibodies are referred to as "armed antibodies." Applicant, in discussing this evidence, has pointed out that in the various submissions, with the exception of the press release on the Genentech website, the term "armed antibodies" is used by the author of the article, rather than by the biotech or drug companies whose products are discussed in the articles. While this is correct, it does not make the evidence any less persuasive. Clearly the various authors must believe that the appropriate way to refer to these antibodies is with the term "armed antibodies" and, further, that the readers of the articles will understand the meaning of the term, or else the authors would not have used the term. We also point out that the articles are found on the websites of institutions that deal with health care matters, such as the Washington State Department of Health, the University of Virginia Health System and Medscape from Web MD. Further, the Genentech web pages clearly show that a competitor has used the term "armed antibodies" in a descriptive/generic manner. Applicant notes that this reference was made in

9

2003, but we regard this as a recent and persuasive usage. Finally, with respect to the evidence submitted by the Examining Attorney, applicant points out that the article in "Signals," from which we have quoted extensively, includes at the very end the Editor's Note that "By sheer coincidence, the title of this article, 'Armed Antibodies,' is also a trademark owned by Viventia Biotech Inc. [applicant]." We do not regard this statement as reflecting either the editor's or author's belief that "armed antibodies" is not a descriptive and/or generic term. Despite the Editor's Note, "armed antibodies" is used throughout the article as a descriptive reference to types of drugs.[2]

The evidence of record is sufficient for us to conclude that combining antibodies with toxins, radionuclides and the like is referred to as "arming" the antibodies, and that ARMED ANTIBODIES would immediately be understood by the relevant consumers to refer to such antibodies. When this term is viewed in connection with applicant's identified goods and services, consumers would immediately understand ARMED ANTIBODIES to refer to a

---

[2] It is obvious that there are many reasons why a publication may choose to include an "Editor's Note," not the least of which is a threat of litigation. Because "Signals" is an online publication, the inclusion of the Editor's Note could easily have been added after the article was initially published.

10

significant characteristic of the goods or services. Applicant's goods in Class 1 are broadly identified as "biological preparations for use in the manufacture of biopharmaceutical and biotechnology products." This identification can encompass preparations that are used to make armed antibodies, and therefore it directly conveys information about a significant feature of the preparations. As for the Class 5 goods, the very identification shows that they are antibodies. Moreover, the medscape.com web page states that "monoclonal antibodies are being linked to a cytocidal agent, such as a toxin or radionuclide." Applicant's identified "monoclonal antibodies and binding fragments thereof and immunoconjugates" would include such antibodies. Thus, ARMED ANTIBODIES directly describes a characteristic of these goods. Finally, applicant's identified "research and product development services in connection with the biopharmaceutical and biotechnology industries" is broad enough to encompass research and product development services in which armed antibodies are a central characteristic or subject matter.

Accordingly, because "armed antibodies" is a recognized term to describe antibodies which are linked to various agents and "arming of antibodies" is a phrase used

11

to describe the process of linking such agents, and because such antibodies are the subject of and/or an essential characteristic of applicant's identified goods and services, the mark ARMED ANTIBODIES directly and immediately conveys significant information about the goods and services. The mark, therefore, is merely descriptive within the meaning of Section 2(e)(1) of the Trademark Act.

We note applicant's argument that its mark is "arbitrary, or at most suggestive," brief, p. 3, but we are simply unpersuaded by applicant's conclusory statements to this effect. Applicant variously contends "that imagination, thought and perception would be required for the consumer to obtain any direct message about the goods and services offered by Applicant," and that ARMED ANTIBODIES "fails to directly convey a real and unequivocal idea of goods and services." Brief, p. 4. However, simply making these statements does not make them true.

In view of the substantial evidence that antibodies that are combined with agents such as toxins and radionuclides are referred to as "armed antibodies," we find that the consumers of the identified goods and services, when encountering the mark ARMED ANTIBODIES used in connection with them, would immediately understand the

12

mark as describing the goods and services.  The mark, therefore, is merely descriptive.

Decision:  The refusal of registration is affirmed.